WO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Rexford J. Rothery,

          Plaintiff,

v.

Carolyn W. Colvin, Acting Commissioner of Social Security,

          Defendant.

No. CV-13-02489-PHX-ESW

**ORDER**

    Pending before the Court is Plaintiff Rexford Rothery's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of his claim for disability insurance benefits. Plaintiff filed his Title II Social Security Disability Insurance ("SSDI") application on July 12, 2010. (A.R. 159). Plaintiff alleges disability beginning June 1, 2010. (A.R. 161).

    This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.[1] (Doc. 12). After reviewing the Administrative Record ("A.R."), Plaintiff's

---

[1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014.

Opening Brief (Doc. 25), Defendant's Response Brief (Doc. 26), and Plaintiff's Reply (Doc. 30), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To be eligible for benefits, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a). The claimant has the burden of proof regarding the first four steps:[2]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges

---

[2] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[3]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id*.

**B. Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and

---

[3] *Parra*, 481 F.3d at 746.

detracts from the ALJ's conclusions.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination.  *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision.  This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II.  Plaintiff's Appeal

### A.  Procedural Background

Plaintiff was born in 1961 and has an associate's degree in computer programming.  Plaintiff has experience working as a computer programmer and as a self-employed pool technician.  (A.R. 39, 42-43, 45).  Plaintiff alleges that he is unable to work due to the following impairments: (i) bipolar depression; (ii) bipolar disorder; (iii) pain in hips and feet; (iv) post-traumatic stress disorder ("PTSD"); (v) lower back pain; and (vi) Serious Mental Illness ("SMI").  (A.R. 70).

Plaintiff filed his initial SSDI benefit application on July 12, 2010, alleging that he became disabled on January 1, 2006.  (A.R. 159).  On August 20, 2010, Social Security spoke with Plaintiff to clarify the nature of his pool business.  (A.R. 161).  Plaintiff stated that he purchased the business in October 2006 and closed it on June 1, 2010.  After

discussing possible disability onset dates, Plaintiff stated that he did not want to furnish any additional paperwork for the business and would use the onset date of June 1, 2010. (*Id.*).

Social Security initially denied Plaintiff's application on November 5, 2010. (A.R. 81). On April 1, 2011, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application. (A.R. 96). Thereafter, Plaintiff requested a hearing before an ALJ. (A.R. 108). The ALJ held a hearing on July 12, 2012, during which Plaintiff was represented by an attorney. (A.R. 34-68). In his August 6, 2012 decision, the ALJ found that Plaintiff is not disabled. (A.R. 15-27). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-6). On December 6, 2013, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. §§ 405(g) requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed steps one through four of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of June 1, 2010 through the date last insured of December 31, 2010. (A.R. 20). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following four impairments: (i) bipolar disorder; (ii) history of PTSD; (iii) polysubstance dependency; and (iv) amphetamine induced mood disorder. (A.R. 21). The ALJ's determination at this step is undisputed.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 of the Social Security regulations. (A.R. 21). This finding is undisputed.

### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ assessed that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels. The ALJ acknowledged that Plaintiff has been diagnosed with various mental illnesses, but did not find that Plaintiff has "significant, ongoing functional limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation." (A.R. 23).

A vocational expert ("VE") testified at the July 12, 2012 hearing. The ALJ asked the VE whether an individual with Plaintiff's age, education, work experience, and RFC could perform Plaintiff's past work as a computer programmer or pool technician. (A.R. 62-63). The VE testified that the hypothetical individual could perform both positions. (A.R. 63). The ALJ accepted the VE's testimony. (A.R. 26). After comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past work, the ALJ found that Plaintiff is able to perform the past work as actually and generally performed. (*Id.*). The ALJ thus found Plaintiff not disabled. (A.R. 27).

Plaintiff challenges the ALJ's determination at this step by arguing that the ALJ improperly discredited Plaintiff's testimony regarding his symptoms. Plaintiff also argues that the ALJ erred in rejecting the opinion of Plaintiff's treating psychiatrist, Russell Gilbert, M.D. In a report dated June 26, 2012, Dr. Gilbert opined that Plaintiff has "moderately severe" and "severe" limitations in a number of areas. (A.R. 838-39). Dr. Gilbert further opined that the limitations existed prior to Plaintiff's last insured date of December 31, 2010.[4] (A.R. 839).

---

[4] A claimant seeking disability insurance benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### 5. Step Five: Capacity to Perform Other Work

The ALJ did not analyze Plaintiff's capacity to perform other work as the ALJ found Plaintiff not disabled at step four.

### C. Plaintiff's Challenge to the ALJ's Analysis at Step Four

#### 1. The ALJ Did Not Improperly Reject Plaintiff's Testimony

When evaluating the credibility of a claimant's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a claimant must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a claimant meets the first test, and there is no evidence of malingering, the ALJ can only reject a claimant's testimony about the severity of his or her symptoms by offering specific, clear and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the claimant's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a claimant's credibility, the ALJ can consider many factors including: a claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence).

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting Plaintiff's testimony. The ALJ's reasons for finding Plaintiff not credible include the following:

- 7 -

1. Plaintiff has always been employed. (A.R. 24). A claimant's work record is a proper consideration in weighing Plaintiff's credibility. *Smolen*, 80 F.3d at 1284-85 (stating that a claimant's work record is one of the factors an ALJ is to consider in weighing a claimant's credibility).

2. Plaintiff avoided reporting income to tax agencies.[5] (A.R. 24). In addition, the ALJ also noted that Plaintiff admitted to driving without a license in violation of state law. (*Id.*). These are also valid considerations in weighing Plaintiff's credibility. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (in weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness).

3. The ALJ also found that evidence suggests that Plaintiff exaggerated his symptoms. (A.R. 24). For example, Plaintiff stated he only goes to stores twice a month to shop for groceries. (A.R. 24, 220). However, the October 15, 2010 surveillance report from the Cooperative Disability Investigation Unit ("CDI") found that this statement "is contradicted by the regular activity on [Plaintiff's] EBT/Food Stamp card."[6] (A.R. 455). *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Molina,* 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

---

[5] In his Opening Brief, Plaintiff argues that there is no evidence in the record that Plaintiff earned enough to require tax payments. (Doc. 25 at 23). But Plaintiff admitted at the July 12, 2012 hearing that he should have filed tax returns during the time his pool business had gross monthly earnings of $2,700.00. (A.R. 64).

[6] Plaintiff argues that the word "regular" does not necessarily mean that Plaintiff shops more than twice a month. The ALJ, however, is responsible for interpreting ambiguities in the evidence. The Court finds that ALJ's interpretation of "regular activity" as meaning more than twice a month is reasonable given the context in which the phrase is used in the CDI report. Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Morgan*, 169 F.3d at 599.

4. The ALJ discussed the report of consultative examiner, Dr. Jacqueline Worsley. During the exam, Plaintiff commented that he was having a "mixed" bipolar episode. (A.R. 24-25, 460). Dr. Worsley explained that most individuals with bipolar disorder cannot identify or understand what constitutes a "mixed episode." (A.R. 460). Dr. Worsley noted that Plaintiff's "presentation and functioning level appeared higher than the typical SMI client."[7] (A.R. 460). The ALJ properly considered these statements in determining Plaintiff's credibility. *Tommasetti*, 533 F.3d at 1039 (in weighing a claimant's credibility, an ALJ may consider "other testimony by claimant that appears less than candid").

5. Finally, the ALJ noted that the medical evidence indicates that Plaintiff's alleged mental impairments are less than totally disabling in severity. (A.R. 25). For example, the ALJ discussed a December 28, 2010 visit at Magellan in which Plaintiff had good hygiene, normal alertness, good eye contact, normal speech, and normal motor functioning. (A.R. 472). The report also indicated that Plaintiff was functioning with the help of his medication regimen and was alcohol and drug free. (*Id*.).

The ALJ's credibility finding in this case is unlike the brief and conclusory credibility findings that the Ninth Circuit Court of Appeals has deemed insufficient in other cases. For example, in *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014), an ALJ stated in a single sentence that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The Court of Appeals held that stopping after this introductory remark "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based." *Id*. at 1103 (internal quotation marks omitted); *see also* 42 U.S.C. § 405(b)(1). The Court further stated that an ALJ's "vague allegation that a claimant's testimony is not consistent

---

[7] Plaintiff was deemed eligible in 2010 to receive benefits under the SMI program through Magellan of Arizona. (A.R. 457).

- 9 -

with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009).

In *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006), the Court of Appeals found the ALJ's "fleeting credibility finding" insufficient. In *Robbins*, the ALJ simply stated that (i) the claimant's testimony was "not consistent with or supported by the overall medical evidence of record" and (ii) "[claimant's] testimony regarding his alcohol dependence and abuse problem remains equivocal." *Id.* In discussing why the ALJ's finding was insufficient, the Court explained that the ALJ did not provide a "narrative discussion" containing "specific reasons for the finding . . .supported by the evidence in the record." *Id.* at 884-85.

Similarly, in *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), an ALJ simply concluded that the claimant's complaints were "not credible" and "exaggerated." The Court held that the finding was insufficient as the ALJ did not provide any specific reasons for disbelieving the claimant other than a lack of objective evidence. *Id.* at 834.

The ALJ's credibility finding in this case is more like the credibility finding in *Stubbs-Danielson v. Astrue,* 539 F.3d 1169 (9th Cir. 2008). In *Stubbs-Danielson*, the Ninth Circuit Court of Appeals found that an ALJ sufficiently explained the reasons for discrediting a claimant's symptom testimony where the ALJ stated that:

> The claimant's allegations as to the intensity, persistence and limiting effects of her symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence. The record reflects that the claimant has normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances.
> * * *
> These activities tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis.

*Id.* at 1175.

- 10 -

The Court of Appeals also found that the medical evidence, including the reports of two physicians who assessed that the claimant could perform a limited range of work, supported the ALJ's credibility determination. *Id.*

Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible. The ALJ discusses the evidence and explains the inconsistencies in the record that he finds discredit Plaintiff's testimony. Like in *Stubbs-Danielson*, the ALJ's conclusion is also supported by substantial evidence in the record as discussed in Section C(3) below.

It is possible that a different ALJ would find Plaintiff's symptom testimony credible. But it is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's allegations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ."). The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record. The Court therefore finds that the ALJ did not err in discrediting Plaintiff's testimony.

### 2. The ALJ Did Not Improperly Reject Dr. Gilbert's Opinion

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to a treating physician's opinion than to the opinion of a non-treating physician. *Id.* An ALJ cannot reject a treating physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that a treating physician's opinion is inconsistent with and not supported by the record as a whole. 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson,* 359 F.3d at 1195 (9th Cir.2004);

*Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record). Another specific and legitimate reason to reject a treating physician's opinion is finding that a treating physician's opinion is based "to a large extent" on a claimant's self-reports that have been properly discredited. *Tommasetti*, 533 F.3d at 1041; *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir.1999) (citing *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir.1989)).

Here, in explaining why he rejected Dr. Gilbert's opinion, the ALJ stated that:

> For the reasons described [previously in the decision], the undersigned has reason to doubt the accuracy of [Plaintiff's] reports of his functional abilities in general, as well as to his treating provider. The inconsistencies in [Plaintiff's] behavior and activities as observed by CDI and [Dr. Worsley], and the fact that [Plaintiff] continues to operate a business of undetermined earnings and value, gives the undersigned substantial reason to doubt that the [Plaintiff] has more than moderate limitations in mental functioning, as described by Dr. Gilbert.

(A.R. 26). The above explanation contains three grounds for rejecting Dr. Gilbert's opinion:[8] (i) Dr. Gilbert's opinion was based on Plaintiff's self-reported limitations, which have been discredited; (ii) Dr. Gilbert's opinion is inconsistent with the reports of Dr. Worsley and CDI; and (iii) Dr. Gilbert's opinion is inconsistent with Plaintiff's daily activities, such as maintaining a pool business.

In challenging the ALJ's rejection of Dr. Gilbert's opinion, Plaintiff first argues that the ALJ "effectively accused [Dr. Gilbert] of being a dupe, just swallowing whole [Plaintiff's] reported symptoms without question. . . . There is no indication from Dr. Gilbert's assessment that his medical conclusions are the result of anything other than his own clinical observations." (Doc. 25 at 16). As Dr. Gilbert's opinion is in a "check-box" format, rather than a narrative, the basis of his report is not clear. Yet Dr. Gilbert's

---

[8] A reviewing court may draw specific and legitimate inferences from an ALJ's decision. *Magallanes*, 881 F.2d at 755.

- 12 -

records do not contain notes of any observations of Plaintiff's alleged limitations. Dr. Gilbert's records do include notes of Plaintiff's self-reports. For example, on October 10, 2011, Dr. Gilbert wrote that Plaintiff "does report [occasional auditory hallucinations]." (A.R. 669). The Court thus finds that the ALJ's conclusion that Dr. Gilbert's opinion was based on Plaintiff's self-reports was reasonable.[9] As discussed in Section C(1) above, the ALJ properly discredited Plaintiff's testimony. The ALJ therefore did not err in rejecting Dr. Gilbert's opinion on the ground that it was based on Plaintiff's self-reports.

The ALJ's finding that Dr. Gilbert's opinion is inconsistent with the reports of Dr. Worsley and CDI is also a specific and legitimate reason for rejecting Dr. Gilbert's opinion. Plaintiff argues that Dr. Gilbert's opinion is not inconsistent with the reports of Dr. Worsley and CDI. (Doc. 30 at 6). Yet there are a number of inconsistencies between the reports of Dr. Worsley and CDI and Dr. Gilbert's opinion. For example:

1.   Dr. Worsley found that Plaintiff's condition has not and will not impose any limitations for 12 months. (A.R. 461). This directly contradicts Dr. Gilbert's opinion that Plaintiff has numerous "moderately severe" and "severe" impairments.

2.   Dr. Worsley found that Plaintiff's social interactions were appropriate, and that Plaintiff was polite, cooperative, and candid. (A.R. 461). The CDI investigator observed Plaintiff laughing and smiling with Plaintiff's friend. (A.R. 455). These findings contradict Dr. Gilbert's opinion that Plaintiff has a "moderately severe" impairment in Plaintiff's ability to relate to other people (Dr. Gilbert's report defined "moderately severe" as an impairment which seriously affects Plaintiff's ability to function). (A.R. 838).

3.   Dr. Worsley's findings that Plaintiff's "long-term memory seemed intact" and that Plaintiff "had no difficulties understanding what was asked during the

---

[9] Although the ALJ did not explicitly state this conclusion, it is implied. As discussed previously, a reviewing court may draw specific and legitimate inferences from an ALJ's decision. *Magallanes*, 881 F.2d at 755.

examination" are inconsistent with Dr. Gilbert's opinion that Plaintiff has a "moderately severe" ability to understand, carry out, and remember instructions. (A.R. 459, 838).

4. Dr. Worsley found that Plaintiff "did not appear to have difficulties adapting to the different questions and tasks during the examination . . . ." (A.R. 461). This is inconsistent with Dr. Gilbert's finding that Plaintiff has a "moderately severe" ability to respond to customary work pressures. (A.R. 838-39).

5. The CDI report also stated that "[a]ccording to his SSA file and his Third Party/Function Report . . . [Plaintiff] only shops twice a month which is contradicted by the regular activities on his EBT/Food Stamp card."[10] (A.R. 455). The CDI report also stated that Plaintiff went into the convenience store alone. (*Id.*). It was reasonable for the ALJ to find that these observations conflicted with Dr. Gilbert's opinion that Plaintiff had "severe" impairments in the ability to perform complex and varied tasks.

Finally, the ALJ noted that Dr. Gilbert's opinion was inconsistent with Plaintiff's continued operation of his pool business. Although the ALJ did not find that the business amounted to substantial gainful activity, the ALJ reasonably found that the continuation of the business conflicted with Dr. Gilbert's opinion that Plaintiff has a "severe" impairment in Plaintiff's ability to perform "varied tasks" and "complex tasks." This contradicts Plaintiff's testimony that Plaintiff was able to maintain approximately ten client accounts at the end of 2010, which is after Plaintiff's alleged disability onset date and at the end of Plaintiff's insured status. (A.R. 55).

The above findings provide a specific and legitimate basis for the ALJ to discount Dr. Gilbert's opinion in favor of other opinions which the ALJ found were better supported by the evidence and more consistent with the record as a whole. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001). Because the ALJ's rejection of Dr. Gilbert's

---

[10] Plaintiff denies that the reported "regular activity" on Plaintiff's EBT card contradicts the third party statement that Plaintiff only shops twice a month. (Doc. 25 at 23). Plaintiff argues that "even if there were a conflict it could only reflect on the third party's accuracy, not [Plaintiff's] veracity." (*Id.*). Plaintiff, however, also stated in Plaintiff's own function report that he shops twice a month. (A.R. 220).

- 14 -

opinion is supported by substantial evidence, as explained below, the Court finds that the ALJ did not improperly discount it.

### 3. The ALJ's Decision is Supported by Substantial Evidence

Under Ninth Circuit case law, a non-treating physician's opinion that rests on objective clinical tests constitutes substantial evidence supporting an ALJ's decision. *Magallanes*, 881 F.2d at 751. Plaintiff argues that Dr. Worsley's report cannot constitute substantial evidence, citing to *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). In *Orn*, an ALJ rejected the opinions of a claimant's two treating physicians in favor of the opinion of an examining physician. *Id*. at 633. The examining physician's findings, however, were the same as the treating physicians' findings. It was the examining physician's conclusions that differed. *Id*. The Ninth Circuit Court of Appeals held that "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence' to support the rejection of a treating physician's opinion." *Id*. at 632.

*Orn* is distinguishable from this case. Here, Dr. Worsley conducted an independent mental exam of Plaintiff. Based upon Plaintiff's behavior and answers throughout the exam, Dr. Worsley rendered findings that differed from Dr. Gilbert's findings. Dr. Worsley found that Plaintiff's thought process was clear and goal-directed with no evidence of psychosis. (A.R. 459). Upon consideration of her findings, Dr. Worsley concluded that Plaintiff did not have any limitations. (A.R. 461).

Further, Dr. Worsley's opinion is supported by other evidence in the record, including Dr. Gilbert's own records:

1. A July 22, 2010 progress note from New Arizona Family indicated that the provider "encouraged [Plaintiff] to go back to work." (A.R. 343). The progress note indicated that Plaintiff's appearance was good, his affect appropriate, his thought process was logical, and his thought content was non-psychotic. (A.R. 344-45).

- 15 -

2. Plaintiff reported on November 17, 2010 to one of Magellan's therapists that he takes care of his pets and does housework (e.g. cooking and cleaning). (A.R. 476). Notes from the visit state that Plaintiff is not psychotic, suicidal, or homicidal. (A.R. 477).

3. Plaintiff stated on December 28, 2010 that "he is functioning with the help of medication." (A.R. 472).

4. A February 22, 2011 examination at Arcadia Family Clinic found that Plaintiff's judgment, insight, and orientation appear to be intact.[11] (A.R. 523).

5. On September 12, 2011, Dr. Gilbert stated that Plaintiff's mood is stable and his mild depressive symptoms were better. (A.R. 693). Dr. Gilbert also stated that Plaintiff did not have current psychosis and was caring for himself well. (*Id.*). In addition, Dr. Gilbert noted that the side effects of Plaintiff's medication "do not significantly interfere with function." (*Id.*).

6. Notes from a September 15, 2011 visit at Magellan state that "[Plaintiff] was pleased with his progress and feels that he is ready to terminate counseling at this time." (A.R. 687).

7. On October 4, 2011, a therapist at Magellan encouraged Plaintiff to "start looking for a more steady job with a more steady income . . . ." (A.R. 672).

8. Notes from an October 10, 2011 Magellan visit state that Plaintiff is actively pursuing a job. (A.R. 666). The therapist referred him to a driving job at Valley Care. Plaintiff told the therapist that "he had [a] DUI several years ago, and had his license suspended until a month ago, but that he would like to try for the job." (A.R. 667).

---

[11] Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen,* 849 F.2d 122, 1225 (9th Cir.1988) ( *citing Kemp v. Weinberger,* 522 F.2d 967, 969 (9th Cir.1975)).

9. On October 10, 2011, Dr. Gilbert stated that Plaintiff did not have current psychosis, his mood was stable, he was not depressed, and he is caring for himself well. (A.R. 668).

10. On October 21, 2011, Plaintiff reported to a therapist at Magellan that "I am better. . . ." (A.R. 658). Plaintiff also stated that he "hang[s] out every day with [his] friend." (*Id*.). Notes also indicate that finances are barriers to "achieving the long term view." Results from a mental status exam during the visit indicate that Plaintiff's thought process was logical, his thought content was non-psychotic, his concentration was good, his memory was intact, and his intellect was good. (A.R. 659).

11. On November 17, 2011, Dr. Gilbert noted that the severity of Plaintiff's symptoms were mild and that Plaintiff had good concentration, intellect, judgment, and insight. (A.R. 646). Dr. Gilbert also noted that Plaintiff's memory was intact. (*Id*.).

12. On December 29, 2011, Plaintiff indicated at a Magellan visit that he would be unable to attend a group therapy session as he had plans to visit a friend in San Francisco. Plaintiff also stated that the friend was moving to Phoenix and he would be driving with the friend from San Francisco to Phoenix. (A.R. 617). On January 11, 2012, Plaintiff reported to Magellan that he was running low on money after helping a friend move from San Francisco to Phoenix. (A.R. 614). These statements support Dr. Worsley's assessment that Plaintiff has adequate social abilities and is not significantly impaired by his mental condition.

13. A February 13, 2012 assessment conducted by Magellan stated that Plaintiff is "[s]table on current meds." (A.R. 585). The assessment also noted that Plaintiff's "only reported social barrier is finances." (A.R. 587). The assessment also contains statements regarding Plaintiff's desired employment. For example, it is stated that "I need a better job," "I want a job," "[Plaintiff] has a [history] of working as a cab driver and would prefer a similar job until he is approved to receive SSI," "I need to figure out what I want to do job-wise with the availability that is out there," and "I am a good worker." (A.R. 588-89).

14. Plaintiff reported on February 9, 2012 at a Magellan visit that he is caring for a 91 year old woman at the house in which he is renting a room. (A.R. 598). On March 7, 2012, Plaintiff again reported at a Magellan visit that he is the main caregiver for a 91 year old woman and also spends time caring for the woman's 68 year old daughter. (A.R. 573).

Given the consistency of Dr. Worsley's opinion with the other evidence in the record, the Court finds that the ALJ did not err in giving Dr. Worsley's opinion significant weight. The ALJ also did not err in giving substantial weight to the March 1, 2011 opinion of non-examining physician Dr. Jonathan Zuess. Dr. Zuess assessed that Plaintiff "is reasonably seen as capable of sustaining at least simple work." (A.R. 89). Since Dr. Zuess's opinion is consistent with other evidence in the record, including the evidence discussed above, the ALJ did not err in giving the opinion substantial weight. *Thomas*, 278 F.3d at 957; *Magallanes*, 881 F.2d at 753 (upholding an ALJ's reliance on the opinion of a non-examining physician where the opinion was supported by objective medical evidence). The Court therefore finds that the ALJ's decision is based on substantial evidence in the record.

### III. CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is supported by substantial evidence and is free from reversible error. Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security. The Clerk of Court shall enter judgment accordingly.

Dated this 11th day of March, 2015.

_____
Eileen S. Willett
United States Magistrate Judge